IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SHELLY R. STEWART,**

        Plaintiff,

                                        Civ. No. 1:13-cv-01444-CL

                                          **ORDER**

      v.

**COMMISSIONER,**
**SOCIAL SECURITY ADMINISTRATION,**

        Defendant.

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Shelly R. Stewart ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DBI") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, it is affirmed.

Page 1 - ORDER

## BACKGROUND

Plaintiff was born in 1961, and was 48 years old on the alleged onset date of disability. She completed the eleventh grade . Tr. 41. She has past relevant work as a cashier, a hand packager, and sandwich maker. Tr. 69.

Plaintiff protectively filed an application for disability insurance on February 16, 2010, alleging disability since December 31, 2009, due to "arthritis, fibromyalgia." Tr. 204. The Commissioner denied her application initially and upon reconsideration. Tr. 101-04, 110-12. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 7, 2012. Tr. 35-76. On May 29, 2012, the ALJ found Plaintiff not disabled. Tr. 20-34. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision Tr. 1-6. Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 416.920(SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(I). This activity is work involving significant mental or physical duties done or intended to be done for pay

Page 2 - ORDER

or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262. F.3d 949, 954 (9th Cir. 2001).

Page 3 -  ORDER

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.; see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ applied the sequential process. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity from the alleged onset date of December 31, 2009, through her date last insured, December 31, 2010. Tr. 25 . At step two, the ALJ found Plaintiff's psoriatic arthritis, cervical degenerative disc disease, fibromyalgia and migraine headaches by history, and obesity were severe impairments. Tr. 26. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the specific impairments listed in the regulations.

The ALJ determined that Plaintiff had the RFC to lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk two hours of an eight-hour workday; sit six hours of an eight-hour workday; occasionally climb ramps and stairs, but never climb ladders, ropes, or

Page 4 - ORDER

scaffolds. She can occasionally kneel and crouch, but can frequently balance and stop, handle, and finger. Tr. 27. In reaching his conclusion, the ALJ considered Plaintiff's testimony, but found her not fully credible. Tr. 28-32. At step four, the ALJ found Plaintiff unable to perform past relevant work. Tr. 32. Considering Plaintiff's age, education, experience, and RFC, the ALJ determined Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including telephone communication clerk, charge account clerk, and dressing clerk. Tr. 33-34. Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, through her date last insured.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009)(quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Id.* "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue,* 495 F.3d

Page 5 - ORDER

scaffolds. She can occasionally kneel and crouch, but can frequently balance and stop, handle, and finger. Tr. 27. In reaching his conclusion, the ALJ considered Plaintiff's testimony, but found her not fully credible. Tr. 28-32. At step four, the ALJ found Plaintiff unable to perform past relevant work. Tr. 32. Considering Plaintiff's age, education, experience, and RFC, the ALJ determined Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including telephone communication clerk, charge account clerk, and dressing clerk. Tr. 33-34. Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, through her date last insured.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009)(quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Id.* "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue,* 495 F.3d

Page 5 - ORDER

625, 630 (9th Cir. 2007)(quoting *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted)).    The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.; see also Bray,* 554 F.3d at 1226.

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch,* 400 F.3d at 679. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.'" *Orn,* 495 F.3d at 630.

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner,* 399 F.2d 532, 540 (9th Cir. 1968).    Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## ADMINISTRATIVE RECORD

### I. Testimony

Plaintiff, her attorney, and a Vocational Expert appeared at a hearing before an ALJ on May 7, 2012. Tr. 35-75. Plaintiff testified that she last worked as a cashier, and quit "[b]ecause I couldn't stand on my feet anymore." Tr. 42. She said her nurse practitioner "took me out of work..." *Id.*

Page 6 - ORDER

Plaintiff previously received SSI for psoriatic arthritis, but lost those benefits when her husband exceeded the income limit. Tr. 43-44. She returned to work thereafter to help care for their five children. Tr. 44.

Plaintiff's biggest problem is that she "can't stand on my feet very long and I have – we're not sure if they're small seizures I get. Plus I can't use my hands very well. My fingers are starting to cripple, so are my feet." *Id.* Psoriatic arthritis affects her feet, back, neck and knees. Her feet swell and she cannot stand without pain. Her knees "pop out and in," occasionally, but her foot pain is constant and increased by weight bearing. Tr. 45. When her feet hurt she sits until her back starts hurting. She takes methadone, Vicodin, a blood pressure medication and an arthritis medication. She injects Humira twice a month. The medications help her and there are no side effects. Tr. 45-46.

She is obese and has been advised to lose weight. She tried to walk, but could "barely walk" because of pain in her knees and swelling in her feet. Tr. 47. Her knees swell and ache if she stands too much. Plaintiff testified that her "knuckles are starting to deform, my hands swell." Tr. 48. Her husband brushes her hair on the weekends, and her daughter lives next door and helps her. The swelling comes and goes in her knuckles, but part of her hands and her thumbs are always swollen. She cannot hold on to a hairbrush or put on her make-up very well. She has good days and bad days. When she has a bad flare-up, she has difficulty closing buttons.

Plaintiff has episodes where her head and neck shake followed by severe headaches and pain in the back of her neck. Tr. 49. The episodes occur "all the time" when it is hot outside, but if she stays in air conditioning they occur occasionally. Plaintiff had four episodes in the past week. The shaking lasts five to eight minutes and then the headache causes her to go to bed. Tr. 49-50. Her

Page 7 - ORDER

fibromyalgia causes pain with touch of her arms and legs and aching. She has depression which causes her to "cry all the time," and lash out at her family, for which she started Cymbalta a week before the hearing. Tr. 51.

She described a normal day as rising between 4:00 and 5:00 a.m. She does not sleep well. "I go from my bed to my chair, from my chair to my bed. I get help taking a shower. My daughter helps me brush my hair out. I try to walk around in my house and outside because I have a swing outside I sit in for a little bit, to spend time with my grandkids, but I'm – sit in my chair a lot of the day." Tr. 51-52. Plaintiff's husband and son do the housework. Sometimes she can help load the dishwasher. She does not clean the bathrooms, vacuum, mop, or drive. Her husband helps her grocery shop. She has been unable to crochet for a few years. Plaintiff watches television for three to four hours a day, and reads the Bible for about an hour a day. Tr. 53. She uses a computer "once in a while." Tr. 53. She stopped going to church about four years ago. Family and friends come to her house, and she goes next door to her daughter's home. Tr. 54.

Plaintiff testified that she can walk "not far," and can stand 15-20 minutes. Tr. 55. She can sit about one half hour without getting up, and she cannot carry anything, though she can lift a gallon of milk with pain in her hands. Tr. 56. Sometimes when she goes grocery shopping she rides in the cart or waits in the car. She drops things about three times a week. About four times a week her symptoms are so severe her husband has to read the Bible to her because she cannot do it herself. She cannot watch television for three to four hours without getting up and moving around. Tr. 58. She has not seen a specialist for her shaking episodes because she cannot afford the copay and the bill. Tr. 59.

Page 8 - ORDER

When her feet "flare up" she cannot stand on them. Her right hand is swollen daily and causes her to be unable to write about once a week. Tr. 61. She gets headaches at least three times a week for about the last year. Tr. 62. Her daughter helps her brush her hair and cook every day. Her daughter helps her dress and ties her shoes when her husband is not home.

Plaintiff testified that the constant ache in her feet has worsened over time, "it feels like needles," and she uses a cane at home sometimes. Tr. 63. When her husband is home, he helps her get to the bathroom. If she tried to work full-time she would need a break every hour of about 15 to 20 minutes. Tr. 64. Plaintiff uses ice packs and heating pads for the swelling in her feet, and she puts her feet up daily. Tr. 65. If she tried to work full-time she would have to call in sick at least three times a week. Tr. 67.

## II. Medical Records

The medical records are extensive, and the parties are familiar with them. Therefore they will be set out below when relevant.

### DISCUSSION

Plaintiff argues that the ALJ erred by (1) finding her less than fully credible; (2) improperly weighing medical evidence; and (3) failing to evaluate the combined effect of her impairments. Because the first two assertions are dispositive, the court need not address Plaintiff's third assignment of error.

## I. Credibility

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the

Page 9 - ORDER

claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Circ. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, "' the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter,* 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947 F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than

Page 10 - ORDER

treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider...ordinary techniques of credibility evaluation, such as the reputation for lying, prior inconsistent statements concerning the symptoms...other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen*, 80 F.3d at 1284.

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 32. The ALJ gave several specific reasons for this determination. Plaintiff contends they are neither clear nor convincing.

### a. Lack of Objective Evidence to Substantiate Her Claims

The ALJ noted no examining or reviewing physician has found Plaintiff as limited as she alleges. Inconsistency with objective medical evidence is a clear and convincing reason to reject a claimant's credibility where, as here, it is not the "sole" reason. 20 C.F.R. § 404.1529; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, Plaintiff's medical records indicate that she was in no acute distress, her fingers, feet, and knees were swollen, but joint range of motion was intact with no joint tenderness. Tr. 319, 322. Nurse Finley's opinion that Plaintiff was limited to thirty minutes of sitting or fifteen minutes of standing before needing to shift positions conflicted with chart notes showing that, at Nurse Finley's recommendation, Plaintiff walked for exercise. Tr. 319, 494. This opinion contradicts Nurse

Finley's notes that objective test findings were negative for muscle pain, joint pain, stiffness, or limitation of motion, and Plaintiff was stable on her medications.  Tr. 375, 378, 384, 386.

Nurse Finley's notes and opinions are contradicted by examining specialists.  During the consultation with Dr. Grunwald Plaintiff demonstrated significant decreased range of motion and muscle strength on direct testing, but did significantly better on indirect testing.  Tr. 366.  Dr. Grunwald suspected suboptimal effort and concluded Plaintiff was capable of light or sedentary work.  Tr. 369.  As the ALJ found, this objective evidence did not support Nurse Finley's opinions, and was a clear and convincing reason to find Plaintiff less than fully credible.

### b. Suboptimal Effort on Examination

Gregory Grunwald, D.O., conducted a Comprehensive Rheumatologic Evaluation on June 2, 2010.  Plaintiff reported she was diagnosed with psoriatic arthritis approximately 15 years ago, and it was currently affecting her entire body, more specifically her feet, ankles, neck, fingers, and back.  Plaintiff reported increasing pain over the last six months.  Tr. 358-69.  She said she was diagnosed with fibromyalgia about seven years ago.

Dr. Grunwald noted a slow gait with a left-sided limp.  Tr. 359.  Plaintiff was able to squat and rise approximately 50% with upper body support.  She was unable to tiptoe walk.  Dr. Grunwald noted Plaintiff "showed signs of significant pain during all aspects of direct testing.  The patient also was noted to have significant questionable ability on direct testing for range of motion as opposed to significantly improved range of motion on indirect testing."  Tr. 366.  He noted Plaintiff reported crocheting.  Tr. 367.  The doctor reported that during testing Plaintiff monitored the muscle strength meters, which suggested to him that she gave suboptimal effort in an attempt to lower test scores.  Tr. 32, 366.   Dr. Grunwald's impression was psoriatic arthritis, nonexistent fibromyalgia, and

Page 12 -  ORDER

morbid obesity.  He repeatedly opined that Plaintiff made "probable suboptimal effort during testing." Tr. 366, 367, 368.  Dr. Grunwald concluded Plaintiff was capable of standing for 15-20 minutes with periodic breaks through an eight hour workday, and of sitting for 20 to 30 minutes with periodic breaks through an eight hour workday. Tr. 368. Dr. Grunwald concluded Plaintiff did not have active fibromyalgia and was capable of working at a light or sedentary position. Tr. 369.

A claimant's failure to cooperate with medical tests or give consistent effort during evaluation lends support to an adverse credibility finding. *Thomas,* 278 F.3d at 959; *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001).  This is a clear and convincing reason to find Plaintiff less than fully credible.

### c. Inconsistencies Between Alleged Inability to Work and Daily Activities

The ALJ noted inconsistencies between Plaintiff's alleged inability to work and her reported activity levels.  Tr. 32.  Contradiction with a claimant's daily living activities is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008).  The ALJ noted Plaintiff's testimony that she watches three to four hours of television daily, sometimes uses a computer, helps care for two cats, reads the Bible for one to two hours, visits with family and friends, and grocery shops. Tr. 32. The ALJ also noted that Plaintiff's testimony that she cannot crochet conflicts with her June 2010 report to Dr. Grunwald that she did crochet.  *Id.,* Tr. 367.  Although there is no evidence that Plaintiff's ability to perform some home activities at her own pace and discretion is transferable to a work environment, her conflicting reports regarding her ability to use her hands is clear and convincing evidence that she is less than fully credible as to her physical limitations.

### II. Medical Evidence

Page 13 - ORDER

In October and November 2009, treating medical provider Kathleen Finley, C.F.N.P., saw Plaintiff for severe pain in her feet and knees, psoriasis rash, peripheral edema in both lower extremities, headaches and fibromyalgia. She was working, but rated her pain between eight and ten on a ten point scale and worsening. Nurse Finley prescribed methadone and methylphenidate (a stimulant used to treat ADHD and narcolepsy). Plaintiff reported she tried to wean off methadone but was not able due to pain.

On November 30, 2009, Plaintiff reported having "spells again like mini-seizures" and she was unable to drive due to daytime somnolence. Nurse Finley diagnosed bilateral adnexal pain and daytime somnolence. Tr. 283-90. In her Chronic Pain Progress Note of December 30, 2009, Nurse Finley noted Plaintiff was no longer working because her feet were too painful. Plaintiff had itchy psoriasis on her back, in her hair, and on her right elbow. Her left arm was numb and tingling from her neck into her fingertips. She was taking two methadone daily. Plaintiff reported episodes of "being out of it" with head shaking and eyes rolling, lasting one to two minutes each. Nurse Finley prescribed Hydrocodone and soma for pain, and diagnosed psoriatic arthritis, fibromyalgia, migraine headaches, sinusitis, diabetes mellitus, psoriasis, left arm parasthesia, right foot pain, and vertigo. Tr. 280-82.

On April 7, 2010, Plaintiff reported left arm pain as well as a migraine headache with photophobia and nausea. Nurse Finley noted obesity, and diagnosed psoriatic arthritis, migraine headache, bilateral knee pain, parasthesia left arm, and neck pain, and ordered a cervical spine x-ray. She prescribed Toradol, Phenergan, and methadone for "intractable pain," and asked Plaintiff to return in two weeks. Tr. 323. Nurse Finley noted Plaintiff's average pain level had been at nine for the past week, despite the fact that the medications helped. Tr. 484-85.

Page 14 - ORDER

Plaintiff reported acute and increasing arm pain of two weeks duration on April 15, 2010. Nurse Finley found instability in the elbow, wrist, upper arm, and hand, and diagnosed parasthesia of the arm with neck pain. Tr. 321-22.  In May, Plaintiff continued to complain of pain, including foot pain.  She had headaches and was finding it difficult to exercise.  Nurse Finley found swollen fingers and feet, painful knees, left arm parasthesia, and neck pain causing headaches.  Nurse Finley diagnosed hyperlipidemia, insulin resistance syndrome, psoriatic arthritis, osteoarthritis of the cervical spine, hypertension, and foot pain. She ordered foot x-rays. Tr. 319-20.

Nurse Finley recorded in June 2010 that Plaintiff's pain averaged nine out of ten, and was ten at worst, with only 40 percent relief from Hydrocodone and methadone lasting two to four hours. Plaintiff reported she was starting a walking program.  Tr. 482-83, 387.

By late September, Plaintiff continued to report pain.  An ultrasound showed several thyroid nodules. Nurse Finley prescribed knee braces. Tr. 384-85, 412-13.

On December 2, 2010, Plaintiff reported pain averaging a nine, with four hours of minimal relief from her medications including Hydrocodone, soma, and methadone.  Plaintiff had new right knee pain and swelling for the past month.  She used a cane to walk but could not walk far.  She had headaches when she laid down or sat.  She had painful swelling of lateral side of the right knee, and more swelling in the right leg than left.   Nurse Finley prescribed phentermine for appetite suppression, restarted methylphenidate, renewed the methadone, and discontinued soma. Tr. 380-81, 407-08.

Nurse Finley completed a form for Disability Determination Services on May 25, 2010.  Tr. 316-17.  She opined that Plaintiff could lift five pounds occasionally but could do no lifting frequently.  She could walk or stand for two hours in an eight hour day, with normal breaks.  She

Page 15 - ORDER

could sit for eight hours. Nurse Finley noted that Plaintiff "falls asleep most time when sit down due to a daytime somnolence similar to narcolepsy. In a lot of pain with psoriatic arthritis in feet and knees and other joints. Without meds can hardly walk or get out of bed." Tr. 316. Nurse Finley said the restrictions began on December 31, 2009, and were expected to continue for the rest of Plaintiff's life.

David Chamberland, M.D., conducted a rheumatology consultation on September 26, 2011. Tr. 415-18. He diagnosed psoriasis and poorly treated psoriatic arthritis. Tr. 417.

In April 2012, Nurse Finley completed a questionnaire in which she stated Plaintiff's pain and other symptoms would frequently interfere with attention and concentration needed to perform even simple work tasks, and that Plaintiff was not capable of even "low stress" jobs. Tr. 494.

Plaintiff argues the ALJ improperly discounted the opinion of Nurse Finley. In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 692 99th Cir. 2009). However, nurse practitioners are defined as "other sources," not acceptable medical sources, and are thus entitled to lesser deference. 20 C.F.R. § 404.1513(d); *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ need only give germane reasons to discount Nurse Finley's opinion. *Molina,* 674 F.3d at 1111.

The ALJ assigned little weight to Nurse Finley's opinion for three reasons. Tr. 30-31. The ALJ noted that, as a nurse practitioner, Nurse Finley was not an acceptable medical source under the regulations. Tr. 30. He discounted her statements because he found they were not supported by the objective evidence and were therefore largely based upon Plaintiff's subjective reports of symptoms that he found less than fully credible. Tr. 31. The ALJ noted Nurse Finley's second opinion was

Page 16 - ORDER

offered more than a year after Plaintiff's insurance status expired. *Id.* Because the ALJ found Nurse Finley's opinions were inconsistent with her treatment notes, he concluded that she appeared to be advocating for Plaintiff.

First, the ALJ is not entitled to discount an opinion simply because it is from a non-acceptable medical source. *See,* SSR 06-03p. That Nurse Finley is not an "acceptable medical source" is not a germane reason to discount her opinion.

Second, Plaintiff must demonstrate that she was disabled prior to her date last insured: December 31, 2010. *Morgan v. Sullivan,* 945 F.2d 1079, 1080 (9th Cir. 1991). Any deterioration in Plaintiff's condition subsequent to the eligibility period is irrelevant. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989). However, the Ninth Circuit has specifically held that "medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Lester v. Chater,* 81 F.3d 821, 832 (9th Cir. 1995)(quoting *Smith v. Bowen,* 849 F.2d 122, 1225 (9th Cir. 1988). Accordingly, the ALJ was not entitled to reject Nurse Finley's opinion merely because it was issued in April 2012.

Third, the AJL found Nurse Finley's opinion conflicted with her treatment notes and the objective medical evidence. Tr. 31. Inconsistencies between a provider's medical notes and conclusions provide a specific and legitimate-more than just germane- reason for rejecting the provider's opinion. *Bayliss v. Barnhart,* 427, F.3d 1211, 1218 (9th Cir. 2005); *see* SSR 06-03p at *5 ("These factors represent basic principles that apply to the consideration of all opinions from medical sources who are not 'acceptable medical sources'....These factors include...how consistent the opinion is with other evidence."). Here, and as noted above, Plaintiff's medical records indicate that she was in no acute distress, her fingers, feet, and knees were swollen, but joint range of motion

was intact with no joint tenderness. Tr. 319, 322. Nurse Finley's opinion that Plaintiff was limited to thirty minutes of sitting or fifteen minutes of standing before needing to shift positions conflicted with chart notes showing that, at Nurse Finley's recommendation, Plaintiff walked for exercise. Tr. 319, 494. This opinion contradicts Nurse Finley's notes that objective test findings were negative for muscle pain, joint pain, stiffness, or limitation of motion, and Plaintiff was stable on her medications. Tr. 375, 378, 384, 386.

Nurse Finley's notes and opinions are contradicted by examining specialists. During the consultation with Dr. Grunwald Plaintiff demonstrated significant decreased range of motion and muscle strength on direct testing, but did significantly better on indirect testing. Tr. 366. Dr. Grunwald suspected suboptimal effort and concluded Plaintiff was capable of light or sedentary work. Tr. 369. As the ALJ found, this objective evidence did not support Nurse Finley's opinions. This is a germane reason for discounting Nurse Finley's opinion.

On this record the ALJ reasonably discounted Nurse Finley's opinion for three germane reasons: her opinion displayed inconsistencies with her treatment notes, it was inconsistent with objective medical evidence, and it was based on Plaintiff's discredited complaints.

## ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this matter is dismissed.

Dated this __24__ day of October, 2015.

Mark D. Clarke
United States Magistrate Judge